UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION<br>3900 Wisconsin Avenue, N.W.<br>Washington, D.C. 20016,<br><br>*Plaintiff,*<br><br>v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON (CONSISTING OF PEMBROKE 4000, CATLIN 2003, CANOPIUS 4444, and IMAGINE 1400)<br>One Lime Street<br>London, England EC3M 7HA<br><br>    Serve:<br>    Sedgwick, Detert, Moran & Arnold LLP<br>    125 Broad Street, 39th Floor<br>    New York, NY 10041,<br><br>CHUBB GROUP OF INSURANCE COMPANIES<br>15 Mountain View Road<br>Warren, NJ 07061-1615,<br><br>CNA INSURANCE COMPANY<br>333 South Wabash Avenue<br>Chicago, Illinois 60604,<br><br>THE TRAVELERS COMPANIES<br>485 Lexington Avenue<br>New York, New York 10017,<br><br>PROFESSIONAL INDEMNITY AGENCY<br>P.O. Box 5000<br>37 Radio Circle Drive<br>Mount Kisco, New York 10549-5000,<br><br>GREAT AMERICAN INSURANCE GROUP<br>580 Walnut Street<br>Cincinnati, Ohio 45202, | Case No.:<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

ZURICH NORTH AMERICA
1400 American Lane
Schaumburg, Illinois 60196-5452,

LIBERTY MUTUAL GROUP,
INCORPORATED
175 Berkeley Street
Boston, Massachusetts 02116,

*and*

FIDELITY & DEPOSIT COMPANY OF
MARYLAND
3910 Keswick Road
Baltimore, Maryland 21211-2226,

      *Defendants.*

## COMPLAINT

Plaintiff Federal National Mortgage Association ("Fannie Mae") brings this action against the Defendant insurance companies: Certain Underwriters at Lloyd's, London subscribing to Pembroke Syndicate 4000, Catlin Syndicate 2003, Canopius Syndicate 4444, and Imagine Syndicate 1400 ("Underwriters"); Chubb Group of Insurance Companies ("Chubb"); CNA Insurance Company; The Travelers Companies; Professional Indemnity Agency; Great American Insurance Group; Zurich North America; Liberty Mutual Group, Incorporated; and Fidelity & Deposit Company of Maryland – collectively "Insurers" or "Defendants" – and in support alleges as follows:

## NATURE OF ACTION

1.    This action involves a dispute about whether Underwriters and Chubb (as primary- and excess-level insurers) and the other Defendants (as excess-level insurers) owe coverage to Fannie Mae, under primary- and excess-level Financial Institution Bonds

(collectively, the "FI Bond") the Insurers sold to Fannie Mae, for losses to Fannie Mae resulting from a fraud perpetrated by US Mortgage Corporation ("US Mortgage").

2. Fannie Mae purchases mortgage loans in the secondary market from entities – like US Mortgage – known as Seller/Servicers. The FI Bond provides broad coverage to Fannie Mae for losses resulting from various types of mortgage fraud that could be committed by a Seller/Servicer in the course of its sale of mortgage loans to Fannie Mae. Among other things, the FI Bond covers losses resulting directly from Fannie Mae having in good faith and in the ordinary course of business purchased mortgage loans which prove to be based upon stolen original mortgages.

3. US Mortgage, one of Fannie Mae's approved Seller/Servicers, sold to Fannie Mae mortgage loans that proved to be based on original mortgages that one or more of US Mortgage's officers and employees had stolen from various credit unions, as well as mortgage loans that are the subject of counterfeiting, forgeries or other types of fraud. The amount Fannie Mae paid for the mortgage loans at issue exceeds $131 million.

4. The Insurers, however, wrongly assert that the FI Bond does not provide coverage for the loss caused to Fannie Mae by US Mortgage.

5. By this action, Fannie Mae seeks a declaratory judgment that loss to Fannie Mae resulting from US Mortgage's fraud is covered under the terms and conditions of the FI Bond. Fannie Mae also seeks damages against the primary insurers on the FI Bond – Certain Underwriters of Lloyd's, London and Chubb Group of Insurance Companies ("Primary Insurers") – for the breach of contract, including breach of the implied covenant of good faith and fair dealing, by reason of their failure to honor their obligations under the FI Bond. Fannie

Mae also seeks attorneys' fees and costs, pre-judgment interest, and such other and further relief as the Court may deem just and proper.

## PARTIES

6. Fannie Mae acts in the secondary mortgage market, purchasing home loans from lenders or mortgage brokers, in order to provide liquidity and stability to the mortgage markets. One of Fannie Mae's missions is to ensure that mortgage bankers, brokers and lenders have the funds to lend to home buyers at affordable rates. Each year, Fannie Mae buys over two million mortgage loans on the secondary market from approved Seller/Servicers.

7. Defendant Certain Underwriters at Lloyd's, London consists of several insurance Syndicates – Pembroke 4000 (Pembroke Managing Agency Limited, The LUC, 2nd Floor South, 3 Minster Court, Mincing Lane, London, United Kingdom EC3R 7DD), Catlin 2003 (Catlin Underwriting Agencies Limited, 3 Minster Court, Mincing Lane, London, United Kingdom EC3R 7DD), Canopius 4444 (Canopius Managing Agents Limited, Gallery 9, One Lime Street, London, United Kingdom EC3M 7HA), and Imagine 1400 (Alterra at Lloyds Limited fka Imagine Syndicate Management Limited, 4th Floor, 70 Gracechurch Street, London, United Kingdom EC3V 0XL) – that provide primary- and excess-level coverage under the FI Bond. Upon information and belief, each of the subscribing Syndicates is headquartered and has its principal place of business in the United Kingdom.

8. Defendant Chubb Group of Insurance Companies is an insurance company that provides primary- and excess-level coverage under the FI Bond. Upon information and belief, Chubb Group of Insurance Companies is a New Jersey corporation that maintains its headquarters and principal place of business at 15 Mountain View Road, Warren, New Jersey 07061-1615.

9. Defendant CNA Insurance Company is an insurance company that provides excess-level coverage under Fannie Mae's Financial Institution Bond. Upon information and belief, CNA Insurance Company is a Delaware corporation that maintains its headquarters and principal place of business at 333 South Wabash Avenue, Chicago, Illinois 60604.

10. Defendant The Travelers Companies is an insurance company that provides excess-level coverage under Fannie Mae's Financial Institution Bond. Upon information and belief, The Travelers Companies is a Minnesota corporation that maintains its headquarters and principal place of business at 485 Lexington Avenue, New York, New York 10017.

11. Defendant Professional Indemnity Agency is an insurance company that provides excess-level coverage under Fannie Mae's Financial Institution Bond. Upon information and belief, Professional Indemnity Agency is a New Jersey corporation that maintains its headquarters and principal place of business at 37 Radio Circle Drive, P.O. Box 5000, Mount Kisco, New York 10549-5000.

12. Defendant Great American Insurance Group is an insurance company that provides excess-level coverage under Fannie Mae's Financial Institution Bond. Upon information and belief, Great American Insurance Group is an Ohio corporation that maintains its headquarters and principal place of business at 580 Walnut Street, Cincinnati, Ohio 45202.

13. Defendant Zurich North America is an insurance company that provides excess-level coverage under Fannie Mae's Financial Institution Bond. Upon information and belief, Zurich North America is a Switzerland corporation that maintains its headquarters and principal place of business at 1400 American Lane, Schaumburg, Illinois 60196-5452.

14. Defendant Liberty Mutual Group, Incorporated is an insurance company that provides excess-level coverage under Fannie Mae's Financial Institution Bond. Upon

information and belief, Liberty Mutual Group, Incorporated is a Massachusetts corporation that maintains its headquarters and principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.

15.  Defendant Fidelity & Trust Company of Maryland is an insurance company that provides excess-level coverage under Fannie Mae's Financial Institution Bond. Upon information and belief, Fidelity & Trust Company of Maryland is a Maryland corporation that maintains its headquarters and principal place of business at 3910 Keswick Road, Baltimore, Maryland 21211-2226.

## JURISDICTION AND VENUE

16.  Federal subject matter jurisdiction exists under 28 U.S.C. § 1331 as this matter arises under 12 U.S.C. § 1723a, which grants Fannie Mae authority "to sue and be sued, and to complain and defend, in any court of competent jurisdiction, State or Federal."

17.  Certain claims herein arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court may declare the rights and other legal relations of the parties pursuant to 28 U.S.C. §§ 2201 and 2202 because this is a case of actual controversy within the Court's jurisdiction.

18.  Federal subject matter jurisdiction exists under 28 U.S.C. § 1332 in that the named parties to this action are of completely diverse citizenship and the amount in controversy exceeds $75,000.00, exclusive of interests and costs. Fannie Mae is deemed to be a citizen of the District of Columbia for purposes of jurisdiction and venue pursuant to 12 U.S.C. § 1717(a)(2)(B).

19.  This Court has personal jurisdiction over the Insurers because, upon information and belief, they conduct business in the District of Columbia.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (b) because this District has personal jurisdiction over the Insurers and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## GENERAL ALLEGATIONS

A. **THE U.S. MORTGAGE FRAUD.**

21. From 1996 until February 4, 2009, US Mortgage was one of Fannie Mae's approximately 1,800 active approved Sellers/Servicers. As a Seller/Servicer, US Mortgage could both sell mortgage loans to Fannie Mae and continue to service those loans post-sale by, among other things, collecting monthly principal and interest payments from the borrowers and remitting such payments to Fannie Mae.

22. As part of its business, US Mortgage, through its subsidiary CU National Mortgage, LLC ("CU National"), served as the agent and *de facto* mortgage department for various credit unions. In this role, credit unions used US Mortgage/CU National to sell mortgage loans that the credit unions decided not to keep in their own portfolios. From 1999 through January 2009, U.S. Mortgage sold Fannie Mae 2,549 mortgage loans from 91 credit unions.

23. In January 2009, it was discovered that the President of US Mortgage/CU National – Michael J. McGrath, Jr. – had perpetrated a fraud Fannie Mae eventually learned involves 544 of the 2,549 mortgage loans, originated on behalf of 25 of its 91 credit union clients. With respect to most of the 544 loans, US Mortgage – specifically Mr. McGrath and certain others – stole mortgages from the credit unions and sold them to Fannie Mae without the credit unions' knowledge or authorization and without remitting the sale proceeds obtained from Fannie Mae to the credit unions.

24. When a mortgage loan is originated, a mortgage note is created and signed by the borrower. Each residential loan includes both a mortgage and an accompanying mortgage note.

25. To accomplish this scheme, as alleged by the credit unions and now admitted by Mr. McGrath, Mr. McGrath (and sometimes others) created and fraudulently signed two Assignments of Mortgages for each mortgage that purported to assign the mortgage associated with the mortgage loan from: 1) a credit union to US Mortgage; and then 2) US Mortgage to Fannie Mae. Each assignment, as stated within it, grants Fannie Mae the mortgage "together with the note(s) and obligations therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage."

26. An "allonge" facilitates the transfer in ownership of a note. US Mortgage also created and fraudulently signed allonges to mortgage notes to transfer the notes from the credit unions to US Mortgage. The allonges contained two endorsements: the first endorsement transferred the mortgage note from the credit union to US Mortgage, and the second endorsement was "in blank," making the mortgage note payable to the bearer, in this case Fannie Mae. Through this scheme, US Mortgage stole both the mortgages and the accompanying mortgage notes.

27. Some of the 544 mortgage loans at issue are the subject of other types of frauds, including but not limited to forgery and counterfeiting.

28. In June 2009, Mr. McGrath pleaded guilty to conspiracy to commit mail and wire fraud and conspiracy to commit money laundering in violation of Title 18 sections 1349 and 1956 (h) of the United States Code. Mr. McGrath admitted that he sold "hundreds of mortgage loans without the knowledge and consent of the credit unions that owned the loans" by "execut[ing] documents assigning the loans from the credit union to U.S. Mortgage in which [he] pretend[ed] to be an officer of the credit unions in question." Plea Hr'g Tr. at 31-32, *United States v. McGrath*, Crim. No. 09-436 (D.N.J. June 11, 2009).

29. Fannie Mae purchased the mortgage loans in the ordinary course of business and in good faith, and did not release funds prior to having received each loan. Based on industry custom, and a prior course of dealing whereby Fannie Mae had purchased more than 2,000 credit union mortgage loans from US Mortgage as the credit unions' agent, Fannie Mae reasonably believed US Mortgage was authorized to sell the mortgage loans at issue to Fannie Mae.

30. To cover up his scheme, Mr. McGrath or his colleagues forwarded expected monthly payments to both Fannie Mae and the appropriate credit union for each mortgage loan so as to simulate the borrowers' principal and interest payments.

31. After learning in late January 2009 of the fraud perpetrated by Mr. McGrath and US Mortgage, Fannie Mae promptly terminated its contract with US Mortgage and transferred its servicing rights to another loan servicer.

**B.   THE CREDIT UNIONS DISPUTE FANNIE MAE'S OWNERSHIP OF THE MORTGAGE LOANS.**

32. The twenty-five credit unions dispute Fannie Mae's ownership of the subject mortgage loans. Three credit unions – Picatinny Federal Credit Union, Suffolk Federal Credit Union ("Suffolk"), and Sperry Associates Federal Credit Union – have sued Fannie Mae to recover the value of subject mortgage loans they held that were sold to Fannie Mae by US Mortgage as part of the fraud. Fannie Mae has sued another credit union – Proponent Federal Credit Union – seeking, *inter alia*, a declaration of rights related to that credit union's competing claim of ownership over mortgage loans.

33. In their complaints, the credit unions assert that US Mortgage fraudulently created and signed assignments of mortgages assigning the mortgages from the credit unions to US Mortgage, then sold the stolen mortgages and mortgage notes to Fannie Mae without remitting the sale proceeds to the credit unions. For example, Suffolk alleges: "From 2004 to 2009, as

U.S. Mortgage's financial condition deteriorated and its trading losses mounted, it began stealing mortgage loans from Suffolk and other credit unions, selling them to Fannie Mae without the credit unions' knowledge or authorization, and using the proceeds from the sales to cover, among other things, its losses and operating expenses. . . . U.S. Mortgage sold the Stolen Mortgages to Fannie Mae by having McGrath and [U.S. Mortgage Vice President Ron] Carti execute the first step documentation themselves. McGrath and Carti signed the allonges to the notes and the mortgage assignments that only authorized Suffolk employees could sign. . . . . McGrath has already pleaded guilty to crimes in connection with his unauthorized sales of the Stolen Mortgages and, in doing so, has admitted that he and Carti executed loan transfer documents purportedly on Suffolk's behalf without Suffolk's authorization." Complaint and Jury Demand ¶¶ 38-48, *Suffolk Fed. Credit Union v. Fed. Nat'l Mortgage Ass'n*, No. 2:10-cv-02763-GEB-MCA (D.N.J. filed May 28, 2010). Suffolk further alleges: "While Fannie Mae may have paid sums of money to U.S. Mortgage, the loans it was purchasing were, in fact, the Stolen Mortgages -- stolen property of Suffolk." *Id.* ¶ 134.

34. Fannie Mae has asserted that it is the holder in due course of the subject mortgage loans having, among other things, purchased them in good faith, believing that US Mortgage was authorized to sell the mortgage loans and without knowledge of US Mortgage's fraud. If, however, as a result of fraud by US Mortgage Fannie Mae is not the owner of the mortgage loans (or holder in due course), then its loss from the fraud (not including various costs and additional amounts resulting from Defendants' conduct) is the value of the mortgage loans Fannie Mae must pay to the credit unions.

35. Fannie Mae has engaged in extensive settlement efforts with most of the twenty-five credit unions (those willing to engage in such discussions) over their claims that Fannie Mae

must return to them the value of mortgage loans US Mortgage sold to Fannie Mae as part of US Mortgage's fraud. Fannie Mae reached settlements with certain of the credit unions, and had informed the Defendants of its settlement discussions with the credit unions and the proposed settlements in advance. The settlements have reduced Fannie Mae's overall exposure to this loss; the amount of Fannie Mae's current covered potential loss is in excess of $108 million plus continuing defense costs.

C.  **THE COVERAGE AFFORDED TO FANNIE MAE BY THE FI BOND.**

36.  Fannie Mae's FI Bond program in effect June 30, 2008 through June 30, 2009 (the relevant coverage period) consists of a primary-level Bond that provides coverage up to a $20 million limit after a $15 million deductible and "follow-form" excess coverage – coverage of materially the same scope as the primary-level Bond but in layers of excess coverage triggered by a loss exceeding the limits of the primary bond and progressive excess policies.

37.  The primary level of the FI Bond that is the subject of this suit is Bond No. B0823FD0805034. (A true and accurate copy of this bond is attached hereto as <u>Exhibit 1</u>.) The cumulative amount of coverage purchased by Fannie Mae totals $150 million (after the $15 million deductible) as follows:

| Category | Layer Amount | Carriers and Amount per Layer | Applying to Loss up to: |
|---|---|---|---|
| Deductible | $15 million | N/A | $15 million |
| Primary Bond | $20 million | Underwriters ($15 million)<br>Chubb ($5 million) | $35 million |
| First-level excess | $20 million | Underwriters ($5 million)<br>CNA ($5 million)<br>Travelers ($5 million)<br>Prof. Indemnity Agency ($5 million) | $55 million |
| Second-level excess | $30 million | Underwriters ($5 million)<br>Travelers ($10 million)<br>Chubb ($10 million)<br>CNA ($5 million) | $85 million |
| Third-level excess | $30 million | Great American ($20 million) | $115 million |

|  |  | CNA ($5 million)<br>Chubb ($5 million) |  |
|---|---|---|---|
| Fourth-level excess | $50 million | Great American ($5 million)<br>Zurich ($12.5 million)<br>Prof. Indemnity Agency ($10 million)<br>Liberty Mutual ($10 million)<br>Fidelity & Deposit Co. ($7.5 million)<br>Chubb ($5 million) | $165 million |

38.  The FI Bond, among other things, provides Fannie Mae insurance coverage for loss it suffers purchasing mortgage loans that are the subject of types of fraud that can occur in the process by which mortgage loans are originated and/or sold to Fannie Mae. Insuring Agreement (I) of the FI Bond, the Forged and Fraudulent Mortgages insuring agreement, provides in part coverage for:

### FORGED AND FRAUDULENT MORTGAGES

(I)  Loss resulting directly from the Insured having in good faith and in the ordinary course of business purchased any Mortgage Loan which proves to:

  (a)  be based upon an original Mortgage, deed of trust, or other instrument creating or discharging a first or second lien upon real property, which bears a forged signature of any person signing in a material capacity, or which has been fraudulently altered in material sense or which is lost or stolen, or which is counterfeited; [or] . . .

  (e)  be based upon the fact that the Mortgage Loan has also been sold or pledged to another party, in whole or in part; . . . .

39.  "Mortgage" is defined as "the mortgage, deed of trust, or other instrument creating a first or second lien on an unsubordinated estate in fee simple in real property securing a mortgage note." "Mortgage Loan" is defined as "an individual mortgage loan, including a modification or consolidation of an existing loan, purchased by the Insured and may include the

original mortgage note and original Mortgage or deed of trust in recordable form delivered to the Insured or its designated Document Custodian upon purchase."

40. The FI Bond also provides coverage for losses Fannie Mae suffers as a result of forgery. In addition to the forgery coverage provided in Insuring Agreement (I), Insuring Agreement (D), the Forgery or Alteration insuring agreement, provides coverage for:

FORGERY OR ALTERATION

(D) Loss resulting directly from

(1) Forgery or alteration of, on or in any Negotiable Instrument (except an Evidence of Debt), Acceptance, Withdrawal Order, receipt for the withdrawal of Property, Certificate of Deposit or Letter of Credit. . . .

A mechanically, digitally, or electronically reproduced signature is treated the same as a handwritten signature.

41. "Forgery," as used in this Insuring Agreement, is defined as "the signing of the name of another with intent to deceive; it does not include the signing of one's own name with or without authority, in any capacity, for any purpose." The term "Negotiable Instrument means any writing: (1) signed by the maker or drawer; and (2) containing any unconditional promise or order to pay a sum certain in Money and no other promise, order, obligation or power given by the maker or drawer; and (3) is payable on demand or at a definite time; and (4) is payable to order or bearer. . . ." The term "Evidence of Debt" "means an instrument, including a Negotiable Instrument, executed by a customer of the Insured and held by the Insured which in the regular course of business is treated as evidencing the customer's debt to the Insured."

42. Coverage is also provided, under F. COURT COSTS AND ATTORNEYS' FEES, for certain costs and attorneys' fees "incurred and paid by the Insured in defending any suit or legal proceeding brought against the Insured to enforce the Insured's liability or alleged

liability on account of any loss, claim or damage which, if established against the Insured, would constitute a collectable loss under this bond in excess of any Deductible Amount."

43. The FI Bond contains various coverage conditions and exclusions, but none precludes coverage for Fannie Mae's loss.

44. All conditions and requirements imposed on Fannie Mae by the FI Bond, including but not limited to payment of premiums, notice of claim, submission of proof of loss, and cooperation with the Insurers, have been satisfied or the Insurers have waived or are estopped from enforcing the same.

45. Fannie Mae's loss exceeds the $15 million deductible.

**D. THE DEFENDANTS' RESPONSE TO FANNIE MAE'S CLAIM.**

46. By letter dated February 13, 2009 to Mr. David Naylor, care of Pembroke-Syndicate 4000 and copied to the other Insurers, and in accordance with the terms of the FI Bond, Fannie Mae provided the Defendants timely notice of Fannie Mae's discovery of circumstances which led to its claim.

47. As required under the FI Bond, Fannie Mae also timely submitted a sworn Proof of Loss, dated August 7, 2009, that describes the nature of the US Mortgage fraud that led to Fannie Mae's claim and the potential amount of Fannie Mae's resulting loss.

48. In addition, through an in-person meeting, conference calls, and other communications, Fannie Mae provided information and documents to Defendants about, among other things, the fraud, Fannie Mae's loss, and the nature and status of disputes and settlements with the credit unions.

49. Through various communications with Defendants, Fannie Mae asserted that it is entitled to coverage for its loss resulting from its purchase of the subject mortgage loans under, among other insuring agreements, Insuring Agreement (I), subparagraph (a) – the Forged and

Fraudulent Mortgages Insuring Agreement – for "Loss resulting directly from the Insured having in good faith and in the ordinary course of business purchased any Mortgage Loan which proves to: (a) be based upon an original Mortgage . . . which is . . . stolen."

50. The Underwriters, however, have stated their intention to deny coverage for Fannie Mae's loss or at least the portion of Fannie Mae's loss (the overwhelming amount) resulting from US Mortgage's theft of mortgages from the credit unions and sale of the mortgages and corresponding mortgage loans to Fannie Mae. Among other things, the Underwriters wrongly contend that for a loss to be covered under subparagraph (a) of the Forged and Fraudulent Mortgages Insuring Agreement there must be a physical taking (as opposed to a fraudulent assignment) of the Mortgage itself which the Underwriters assert Fannie Mae has not demonstrated. Upon information and belief, the Underwriters also wrongly assert that Fannie Mae has not satisfied various conditions of the FI Bond or that certain exclusions preclude coverage.

51. To the contrary, however, loss resulting from Fannie Mae's purchases of the mortgage loans at issue is covered. Mr. McGrath's (and others') admitted unlawful taking of Mortgages (some or all of which, upon information and belief, were in US Mortgage's possession) from the credit unions through fraudulent assignments constitutes a theft of (or the stealing of) original Mortgages. Fannie Mae accordingly purchased Mortgage Loan(s) "which prove to: (a) be based upon an original Mortgage . . . which is . . . stolen." The resulting loss triggers subparagraph (a) of the Forged and Fraudulent Mortgages Insuring Agreement, if not other subparagraphs in Insuring Agreement (I) and other Insuring Agreements in the FI Bond including but not limited to Insuring Agreement (D), Forgery or Alteration. Loss resulting from the other types of fraud (including forgery and counterfeiting) associated with some of the

mortgage loans involved in Mr. McGrath's scheme is also covered, as are costs Fannie Mae is incurring in its litigation against the credit unions. Fannie Mae has satisfied all conditions under the FI Bond and no exclusions preclude coverage.

52. Upon information and belief, the Defendants have consulted with each other and agreed on their approach to Fannie Mae's claim.

53. Upon information and belief, the other Defendants are adopting the coverage positions of the Underwriters.

54. Because of the positions adopted by the Underwriters and the other Defendants, Fannie Mae is being deprived of the benefit of insurance coverage for which it paid substantial premiums and is incurring additional expenses in order to force Defendants to comply with their contractual obligations under the FI Bond.

## COUNT ONE: DECLARATORY JUDGMENT
### (All Defendants)

55. Fannie Mae incorporates paragraphs 1 through 54 as if fully set forth herein.

56. Actual and justiciable controversies exist between Fannie Mae and Defendants concerning Defendants' obligations to cover Fannie Mae's losses resulting from US Mortgage's fraud including, but not limited to, whether coverage under subparagraph (a) of the Forged and Fraudulent Mortgages Insuring Agreement is contingent upon a physical taking of original Mortgages as opposed to the theft of (or stealing of) such mortgages through the unlawful assignments created by Mr. McGrath.

57. Pursuant to 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Fannie Mae requests a declaration that coverage is available under the FI Bond for loss resulting from US Mortgage's fraud including, but not limited to, loss resulting from Fannie Mae's

purchase of mortgage loans which have proven to be based on stolen original mortgages, and that Defendants are obligated to provide coverage for the amount of Fannie Mae's loss, including the costs of litigation against the credit unions, that exceeds the applicable deductible up to the limits of the coverage each Defendant provides under the FI Bond.

## COUNT TWO: BREACH OF CONTRACT
### (Against Certain Underwriters at Lloyd's, London & Chubb Group of Insurance Cos.)

58. Fannie Mae incorporates paragraphs 1 through 57 as if fully set forth herein.

59. Defendants have received all premiums due under the FI Bond and Fannie Mae has complied with all other terms, provisions and conditions of the FI Bond.

60. The Primary Insurers on the FI Bond, Certain Underwriters at Lloyd's, London and Chubb Group of Insurance Companies, have breached (or, in the alternative, have anticipatorily breached) their contractual obligations under the FI Bond to cover loss caused to Fannie Mae in excess of Fannie Mae's deductible by asserting that loss suffered by Fannie Mae as a result of US Mortgage's fraud is not covered.

61. In denying their coverage obligations, the Primary Insurers also breached their contractual obligations to act in good faith and to deal fairly with Fannie Mae.

62. As a result of the Primary Insurers' breach (or, in the alternative, anticipatory breach) of contract, Fannie Mae is uncompensated from the Primary Insurers for any portion of Fannie Mae's loss.

63. As a direct and proximate result of the Primary Insurers' breach (or, in the alternative, anticipatory breach) of contract, Fannie Mae has incurred additional consequential damages, including without limitation, attorneys' fees and other expenses in bringing this action.

64. As a direct and proximate result of the aforesaid actions by the Primary Insurers, Fannie Mae has suffered damages in excess of $75,000, exclusive of interests and costs, in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Fannie Mae requests that the Court enter judgment against the Defendants and declare that they are obligated to provide coverage for the full amount of Fannie Mae's loss resulting from US Mortgage's fraud up to the respective limits of the primary and excess bonds according to their terms; and enter judgment against the Primary Insurers – Certain Underwriters at Lloyd's, London and Chubb Group of Insurance Companies – for breach of contract and against these Defendants award Fannie Mae: (1) actual money damages in an amount to be determined at trial for breach of the FI Bond and breach of the implied covenant of good faith and fair dealing; (2) Fannie Mae's attorneys' fees and costs incurred in connection with this suit; (3) interest according to law; and (4) such other and further relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Matthew J. Schlesinger

Matthew J. Schlesinger (D.C. Bar No. 429689)
Michael B. Roberts (D.C. Bar No. 976409)
REED SMITH LLP
1301 K Street, N.W.
Suite 1100 - East Tower
Washington, D.C. 20005-3373
Telephone:   202-414-9200
Facsimile:    202-414-9299
mschlesinger@reedsmith.com
mroberts@reedsmith.com

Dated: October 20, 2010                    *Counsel for Federal National Mortgage Association*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>*Plaintiff,*<br><br>v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, et al.<br><br>*Defendants.* | Case No.: |

## DEMAND FOR JURY TRIAL

Plaintiff Federal National Mortgage Association hereby demands trial by jury in the above-captioned civil action as to all issues so triable.

Respectfully submitted,

_____
Matthew J. Schlesinger  (D.C. Bar. No. 429689)
Michael B. Roberts  (D.C. Bar No. 976409)
REED SMITH LLP
1301 K Street, N.W.
Suite 1100 - East Tower
Washington, D.C. 20005-3373
Telephone:    202-414-9200
Facsimile:     202-414-9299
mschlesinger@reedsmith.com
mroberts@reedsmith.com

Dated: October 20, 2010                                 *Counsel for Federal National Mortgage Association*